## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATHERINE BELCASTRO GONZALEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF OMAHA, a Municipal )<br>Corporation, TODD SCHMADERER, )<br>Chief of Police of the Omaha Police )<br>Department, in his official and individual )<br>Capacity and JEAN STOTHERT, Mayor )<br>of the City of Omaha, and TIM YOUNG, )<br>Former Human Relations Director for the )<br>City of Omaha, in his  official and )<br>individual Capacity )<br>)<br>Defendants. ) | CASE NO. _____<br><br><br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

The Plaintiff Katherine Belcastro-Gonzalez, by and through her Attorneys of record,

states and alleges as follows:

### GENERAL ALLEGATIONS:

1.     The Plaintiff, Katherine Belcastro-Gonzalez, is a resident of Papillion, Sarpy

County, Nebraska, and is currently employed by the City of Omaha Police Department.

2.     Plaintiff Katherine Belcastro-Gonzalez commenced employment at the City of

Omaha Police Department ("OPD") in 1994 as a sworn officer and she has been employed as the

Captain for the Southeast Precinct since 2010. She is a member of multiple boards/committees

and associations, including but not limited to, South Omaha Business Association, Old Market

Business Association, Nebraska Association of Women's Police (2015), Police Executive

Research Forum (PERF), International Association of Chief's of Police (IACP), Black Police

Officer's Association, Omaha Police UNION, and the National Latino Peace Officers

Association (2005) for which she has been an Elected Board Member and Media Relations/Community Liaison for the Omaha Chapter since 2012.

3.      The Defendant, City of Omaha, located in Douglas County, Nebraska, was and is a political subdivision within the State of Nebraska. The Defendant qualifies as an "Employer" within the meaning and definition of, according to *42 U.S.C. § 2000 (e) et. seq.*, in that the Defendant City of Omaha is engaged in an industry affecting commerce and has fifteen or more employees for each working day and twenty or more calendar weeks in the year.

4.      Defendant, Tim Young, an individual residing in Lincoln, Nebraska, was the Human Resources Director for Defendant City of Omaha, Douglas County, Nebraska, for a period of about two years from 2017 to 2019. Defendant Mayor Jean Stothert nominated and designated Defendant Tim Young as the City of Omaha's Human Resources Director from his former position of Assistant Human Resources Director in June 29, 2017, at the City of Omaha Personnel Board Regular Meeting. Defendant, Tim Young attended his last personnel board meeting in his capacity as Human Resources Director on July 25, 2019.

5.      Defendant, Chief Todd Schmaderer is employed by the City of Omaha Police Department, *R.R.S. 1943, § 14-601 et seq.*, with powers and duties prescribed under *Neb.Rev.St. § 14-602*, who was Plaintiff's superior for the duration of the matters at issue herein, and a resident of Omaha, Nebraska.

6.      Defendant, Jean Stothert is the current Mayor of the City of Omaha, with authority and duties pursuant to *Code 1980, § 23-6; Ord. No. 35625, §1, 6-19-01*, and is a resident of Omaha, Douglas County, Nebraska. Mayor Jean Stothert holds the power to appoint and remove the Human Resources Director, outlined in *Code 1980, § 23-61; Ord. No. 35625, §*

2

*1, 6-19-01* and *Code 1980, § 23-64; Ord. No. 35625, § 1, 6-19-01.*

7.      That on or about March 26, 2018, Plaintiff Katherine Belcastro-Gonzalez filed

charges of discrimination against the Defendants, satisfying the procedural requirements of *42*

*U.S.C. §2000e-5(a)-(e)*, with the Nebraska Equal Opportunity Commission and EEOC. Such

charges were filed within 180 days after the alleged unlawful employment practices occurred.

On October 17, 2019, the Nebraska Equal Opportunity Commission issued a determination and

right to sue letter which was received by the Plaintiff.

8.      This is an action arising under Title VII of the Civil Rights Act of 1964, as

amended, *42 U.S.C. §2000e, et. seq. (2000)*, to address the unlawful acts of prohibited retaliation

and sex discrimination and violations of the Nebraska Fair Employment Practices Act, the State

Government Effectiveness Act of 1993, and the Palmer Consent Decree of 1993, against the

Plaintiff.

9.      This Court has jurisdiction over the claims to the Plaintiff pursuant to *22 U.S.C.*

*§§1331 and 1338*.

10.     Plaintiff, Katherine Belcastro-Gonzalez is a highly-decorated, widely-respected

and accomplished sworn officer of OPD, as evidenced by her receipt of exceptional performance

appraisals, additional training and courses, and awards for excellent work spanning over 25 years

of her career. Belcastro-Gonzalez is the longest tenured female police captain to work the street

in the history of the Omaha Police Department.  Belcastro-Gonzalez commands over 100 police

officers on the street, in the busiest precinct in the city.  She has mentored several new and past

command officers who are now in speciality positions and been promoted.  Plaintiff has received

several letters of thanks for her distinguished service by her peers for her dedicated, hard work,

including federal partners. An e-mail from the U.S. Secret Service thanked her for her leadership in preparing for a Trump visit in 2016. In 2010, she was part of a team of officers and was in an officer involved shooting with her subordinates. She was awarded officer of the year as a Captain in 2016 and 2017 for her dedication to community service. She was the incident commander for the Vice President of the United States visit in March 2016. Belcastro-Gonzalez was awarded the ribbon of excellence for the planning, organization and commanding of numerous protests, rallies and marches throughout 2017. Belcastro-Gonzalez was the incident commander for the Vice Presidents visit in March 2019 and POTUS Trump visit in 2018. She is a graduate from the Senior Management Institute for Police (SMIP) and leadership in police organizations instructor for the International Association of Chief's of Police (IACP). She was recognized as police officer of the year by the national latino peace officers association, (NLPOA). She spent half of her career working violent crime in the gang and criminal investigations unit as a detective and command officer. Detective Belcastro-Gonzalez has performed as Acting Captain of the Criminal Detective Bureau and Acting Deputy Chief on several occasions.

11.     In March 2017 Plaintiff learned that her 2010 sexual harassment complaint against Lieutenant Kerry (hereinafter "Neumann") Neumann was not fully investigated and was found under a desk in the internal affairs office. Captain Thomas Shaffer of the Internal Affairs Unit, relayed information that such past claims of sexual harassment were not properly investigated or thoroughly documented by his predecessors in the Internal Affairs Unit. Schmaderer was Plaintiff's immediate supervisor in 2010.

12.  In May 2017 the department was anticipating vacancies at the rank of a Deputy

4

Chief.  News about a potential coverup of Plaintiff's 2010 sexual harassment complaint spread, and several female officers spoke to the Plaintiff.  Neumann was on the eligibility list.  All were concerned about Neumann obtaining a position of higher rank and extremely concerned about Neumann obtaining a position of higher rank authority because of his past wrongful conduct directed at women in the workplace, which has been duly reported and corroborated but for which he had never been disciplined.

13.     Female officers spoke to the Plaintiff and stated they were afraid of retaliation if they filed a complaint.  Plaintiff was concerned as well but felt compelled to voice  concern on behalf of herself and other female officers employed at City of Omaha Police Department.  If promoted, Neumann would potentially supervise Plaintiff.  Accordingly, all are members of a protected class.  Plaintiff reported that female officers, were very concerned that Neumann was on track to be promoted, despite a history of unresolved or otherwise buried internal affairs complaints for sexual harassment and treating women disparately in the workplace.

14.     Previous complaints had been ignored or otherwise not investigated by the Defendants to protect the promotion of Neumann.  Normally, no officer who had such an egregious and ongoing complaint filed against him with the City of Omaha or an ongoing internal affairs investigation would be  promoted. A proper investigation would have found the complaints were valid and that record would likely prevent promotion.

15.     On or about May 1, 2017, Plaintiff filed a complaint directly with the City of Omaha Mayor's Office, pursuant to the Mayor's Executive Order S-33-16, reporting unlawful discrimination practices and disparate treatment of women by OPD in the workplace and further violations of the Palmer Consent Decree (1993).

16.     The actions taken to cover up or bury complaints against Neumann was and is in direct violation of the Palmer Consent Decree (1993), which mandates that the Chief of OPD *shall* take corrective action if the Chief of OPD determines that a pattern has developed which has a discriminatory effect or unlawful bias against female sworn officers, and further mandates that the City of Omaha and the Chief of OPD have a duty to retain all records for a period of 5 years relating to the recruitment, selection, promotion, training, assignment, and discipline concerning all applicants and sworn officers.

17.     Such complaint was filed directly with the Mayor's Office as Plaintiff sought direct accountability of OPD male superiors for treating women with hostility and with a lesser regard than their male counterparts in the OPD workplace.

18.     Because of the close relationship between Neumann and Defendant Todd Schmaderer, and Schmaderer's past cover up of Neumann's past sexual harassment complaint, Plaintiff sought assistance from a publicly appointed officer, pursuant to the State Government Effectiveness Act. Neb.Rev.Stat. § 81-2701.

19.     Rather than enforcing the Palmer Consent Decree or Defendants' policy regarding the promotion process, Defendant, Tim Young conducted the "investigation" into Neumann's past conduct in a manner so that he could be promoted because no employee who had such an egregious and ongoing claims filed with the City of Omaha or internal affairs was previously promoted by Defendant, Todd Schmaderer.

20.     Defendant Tim Young failed to inquire into the covered up charges against Neumann, and instead voiced his disbelief about the veracity of the charges to the very women who reported Neumann for his wrongful treatment of women in the workplace. Defendant, Tim

6

Young blatantly disregarded supporting testimony and falsely asserted that there was "contradicting" evidence regarding Neumann's past and present conduct.

21. Rather than investigating the covered up or otherwise undocumented complaints against Neumann, Tim Young interviewed otherwise uninvolved witnesses and named parties for the purpose of skewing the investigation in Neumann's favor. Tim Young did not interview all of the witnesses identified by the Plaintiff.

22. Based on the Plaintiffs May 2017 complaint against Neumann, Tim Young conducted his investigation. Despite compelling evidence of Neumann's repeated wrongful behavior, Neumann was promoted to Deputy Chief by Schmaderer on September 27, 2017. Tim Young then issued a letter to Plaintiff September 1, 2017, stating that he would take no action against Neumann and closed the investigation.

23. Defendant, Tim Young then refused to discuss any specifics with Plaintiff about his investigation into Neumann. He addressed this in an e-mail to Plaintiff on or about December 26, 2017, remaining adamant that he not disclose any details regarding this investigation even though it was permitted. Further, Deputy City Attorney Bernard in den Bosch acknowledged these constituted violations of the Palmer Consent Decree (1993) and 28 C.F.R. § 50.14 in an e-mail to Plaintiff, on or about December 26, 2017.

24. Defendant, Tim Young was notified of deficiencies in the testing process, specifically violations of the Palmer Consent Decree through an email sent to him by Lt. George Merithew on June 1, 2018. Plaintiff was then retaliated against by Defendants and their agents when they wrongfully passed her over for promotion for the vacant Deputy Chief position for which she was the most experienced and qualified. Plaintiff finished first among all applicants,

scoring an unprecedented 100% on the promotional examination as graded by peers from other police agencies across the United States.  The City of Omaha contracts with an outside firm to proctor the examination and pays the outside firm approximately $750,000.00 over a three year period of the agreement to recruit and select subject matter experts to assess, score and rank the most qualified candidates for promotion.  Additionally, Plaintiff was passed over for speciality assignments in favor of less experienced captains.  Plaintiff was a command officer in the criminal investigations bureau and was acting captain in the criminal investigations bureau yet passed over four (4) different times for less experienced captains which caused her to lose pay and training.

25.     In efforts to hide the intent to retaliate against Plaintiff, Defendants, by and through each of their agents attempted to wrongfully alter or "smooth" over the Deputy Chief list by sending it back twice to the city's promotional consultant to have it re-scored to prevent Plaintiff from keeping her #1 rank.

26.     The wrongful effort to alter the results was unsuccessful as the consulting company refused to lower the ranking of the #1 candidate, Plaintiff Katherine Gonzalez.

27.     Despite Plaintiff's #1 rank and Defendant Todd Shmaderer's assertion that he "never passes over number #1" for promotion to fill this vacant position, Defendant Todd Schmaderer skipped over Plaintiff and promoted a lower ranked female, Michele Bang, and lower ranked male, Ken Kanger, instead of Plaintiff.

28.     While the list was active and promotion were still possible, the Defendants, in order to disqualify Plaintiff for promotion, filed baseless and unsubstantiated complaints on April 10, 2018, and alleged that Plaintiff was unprofessional at a meeting and abused overtime.  These

Complaints were subsequently closed without further inquiry June 27, 2018, just two days after Defendant Chief Todd Schmaderer filled the Deputy Chief positions with Michele Bang and Kenneth Kanger, instead of Plaintiff, on June 25, 2018.

29.    Plaintiff acted in pursuit of *§2000e, et. seq. (2000)*, voicing a reasonable belief that Defendants have engaged and continue to engage in unlawful employment practices by initiating this investigation.  This conduct is well within the scope of protected activity pursuant to *Neb. Rev. St. §  81-2701* and *42 U.S.C. §2000e, et. seq. (2000),* reporting unlawful conduct or employment practices by Defendants.

30.    Plaintiff was entitled to be free from retaliation by her employer for reporting such conduct and participating in such subsequent investigation thereafter, pursuant to *42 U.S.C. §2000e, et. seq. (2000)*.

31.    Defendants wrongfully retaliated against Plaintiff for engaging in such protected activity to damage Plaintiff's professional reputation, prevent Plaintiff from being promoted by employing wrongful means, all retaliatory for the purpose of Defendants to advance their own interests.

32.    Defendants succeeded in retaliating and prevented Plaintiff from obtaining the promotion, subsequent pay increases and pension benefits by and through the following unlawful actions, however not an exhaustive list:

   a.    That Defendants failed to investigate and keep proper documented records of past claims against Kerry Neumann for the hostile and discriminatory treatment of female officers and civilians.

   b.    Defendants failed to take corrective action in light of evidence of a pattern

9

of hostile treatment of females which developed in the OPD workplace which has had a discriminatory effect against female sworn officers and civilians.

c.    Defendants failed to retain all records concerning discipline of all applicants and sworn officers for a period of 5 years when Defendants acted in concert to bury or otherwise intentionally fail to document internal affairs complaints against Neumann. This was in direct violation of the Palmer Consent Decree (1993).

d.    Tim Young failed to investigate past claims against Neumann for impermissible reasons, despite clear knowledge from the Captain of Internal Affairs, Tom Schaffer, that such past claims were not properly investigated or documented.

e.    Despite clear testimony from female officers against Neumann concerning his past wrongful conduct in treating women disparately and unlawfully in the workplace, Tim Young, acting in his HR Director capacity, took no action and did not make further inquiry.

f.    Because of Defendant Todd Schmaderer's influence or other impermissible reasons, Tim Young, acting in his HR Director capacity, took no action against Neumann, reasoning there was "contradicting" evidence, which Plaintiff was notified in writing on September 1, 2017.

g.    One month after Tim Young decided not to take any action against Neumann, and despite alarming testimony by female sworn officers

against him, Neumann was promoted, to fill the Deputy Police Chief position by Defendant Chief Todd Schmaderer in September, 2017.

h.   Despite "evidence of a problem" in the selection process for the position of Deputy Police Chief in September, 2017, which included inconsistent procedures under the Palmer Consent Decree, Defendant Chief Todd Schmaderer failed to take any corrective action.

i.   Despite clear acknowledgment by Deputy City Attorney Bernard in den Bosch that the City of Omaha had in fact violated the Palmer Consent Decree and 28 CFR § 50.14, in an e-mail dated December 29, 2017, Defendant Tim Young refused to discuss any details regarding his investigation with Plaintiff and further evaded communication with Plaintiff.

j.   That on or about January 1, 2018, Defendant Chief Todd Schmaderer promoted Tom Schaffer, a less qualified male, to fill the vacant Interim Deputy Chief position, instead of the much more qualified Plaintiff.  This resulted in loss of pay and training to the Plaintiff.

k.   Defendants failed to be consistent in the promotion and selection process when Defendant Chief Todd Schmaderer wrongfully attempted to skew the test results or lists for the Deputy Police Chief position in June, 2018, to prevent Plaintiff from being ranked #1 for Deputy Police Chief.

l.   After failing to remove Plaintiff from her #1 rank, Defendants acted in concert to file baseless and unsubstantiated claims against Plaintiff to

advance Defendants' own interests.

m.    All this was done in retaliation against Plaintiff for engaging in protected activity. With no prior history of misconduct, coupled with an exceptional career spanning over 25 years, Plaintiff was wrongfully retaliated against for reporting unlawful conduct by an employer.

n.    Defendant Tim Young maliciously sought out and used the testimony of uninvolved and unnamed parties to attempt to bolster Neumann's reputation as a non-abuser and cover numerous past patterns of sexual discrimination.

33.    As a direct and proximate result of Defendants' actions against Plaintiff in retaliation, Plaintiff has suffered damages, including but not limited to, a damaged professional reputation, loss in the opportunity for higher pay and long-term pension benefits, and a denial of essential training for which Plaintiff was qualified.   Plaintiff lost career track advancement by being denied speciality position opportunities and was on the fast track to become the first female Police Chief in the history of the Omaha Police Department.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages, back pay and all lost benefits she sustained as a result of the unlawful retaliation and disparate treatment, her costs incurred herein and reasonable attorney fees and for any other relief deemed appropriate by the Court.

## FIRST CAUSE OF ACTION
## RETALIATION

34.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 to

the extent as if fully set forth herein.

35.    Plaintiff, on numerous occasions, voiced her opposition and objected to the continuous and ongoing discriminatory conduct and unlawful practices at OPD and had filed a claim of discrimination to seek redress.

36.    That the Plaintiff in fact filed a claim based on her reasonable belief that Defendants had engaged in unlawful employment practices or wrongful conduct.

37.    That the Defendants and their agents and employees unlawfully retaliated against the Plaintiff for her comments regarding the lawful exercise of her civil rights and discrimination against her and other sworn female officers employed at OPD, and Defendants further subjected her to adverse treatment through seeking and fabricating reasons not to promote Plaintiff when she objectively had higher qualifications than such officers chosen over Plaintiff.

38.    That as a direct and proximate result of the Defendants unlawful retaliation against Plaintiff for her claim filed May 1, 2017, and her subsequent participation in such investigation thereof, Plaintiff has suffered economic losses and lost benefits in an amount to be determined at trial, and severe mental and emotional anguish from a severely damaged professional reputation and lost opportunities for pay increase and pension benefits.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, equitable relief pursuant to *42 U.S.C. § 2000e-5(g),* reasonable attorney's fees pursuant to *42 U.S.C. § 2000e-5(k),* her costs incurred herein and for such other relief deemed appropriate by the Court.

KATHERINE BELCASTRO-
GONZALEZ, Plaintiff

BY:   s/Thomas M. White
Thomas M. White, #17452
Amy S. Jorgensen, #23215
WHITE & JORGENSEN
3114 St. Mary's Avenue
Omaha, Nebraska  68105
(402) 346-5700

ATTORNEYS FOR PLAINTIFFS