## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KATHERINE BELCASTRO-GONZALEZ, | ) | **CASE NO. 8:19CV572** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF OMAHA, a Municipal Corporation, | ) | |
| TODD SCHMADERER, Chief of Police of | ) | |
| the Omaha Police Department in his official | ) | |
| and individual capacity and JEAN | ) | |
| STOTHERT, Mayor of the City of Omaha, | ) | |
| and Tim Young, former Human Relations | ) | |
| Director for the City of Omaha, in his official | ) | |
| and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN
## SUPPORT OF MOTION IN LIMINE

Prepared and submitted by:
MICHELLE PETERS, No. 20021
Deputy City Attorney
Attorney for Defendants
1819 Farnam Street, Suite 804
Omaha, NE 68183
Telephone:  402/444-5115
Fax:  402-444-5125
Email:  michelle.peters@cityofomaha.org

Defendants City of Omaha and Chief Todd Schmaderer have moved this Court for an Order to limit/preclude the testimony of certain witnesses to the sole issue before this Court, namely retaliation. Any testimony relating to alleged discrimination or harassment by a current or former City employee is not relevant and is overly prejudicial.

## BACKGROUND/FACTS

From the onset of this litigation, Plaintiff has blurred the lines of discrimination vs. retaliation. Again, this is NOT a discrimination case. There are no allegations of discrimination perpetrated against Plaintiff by Chief Schmaderer. Nonetheless, Plaintiff has continually alleged that a retired male employee (not named in this lawsuit and therefore will be designated as "KN") has a history of discrimination and sexual harassment while at the Omaha Police Department. During the discovery phase of this case, Plaintiff's counsel took depositions of several current and/or retired female employees who purported that KN also perpetrated some type of harassment or sex discrimination against them. Plaintiff filed an internal affairs complaint regarding her treatment by KN in 2010. Plaintiff recognizes that her complaint filed in 2010 cannot be the basis for her retaliation lawsuit, but she is sticking to the argument that she renewed her complaint in 2017 which relates back to the 2010 complaint. Defendants have objected to this "relation back" and this matter was fully briefed by the parties in Defendants' Motion for Summary Judgment. As of the date of this filing, the District Judge has not ruled on the Motion for Summary Judgment.

Plaintiff also has thrown out many red-herrings in this case to dilute and confuse the issues. For example, she brings up the Palmer Consent Decree from 1993, and alleged violations by the City of that Decree. That allegation is irrelevant and is not a separate cause of action. Defendants respectfully request that this court not let the Plaintiff confuse the facts and issues to

- 1 -

be tried by a jury by limiting certain, specific evidence. In particular, Defendants request the following:

1)      Precluding the testimony of any witness regarding discrimination or harassment by KN; specifically, the testimony of Staci Witkowski and her charges of discrimination filed in 2010/11 regarding KN and unformalized claims by Lori Schenkelberg, Marlene Rieder (Novotny), Catherine Milone, and Stefanie Fidone.

2)      Precluding the testimony of any reference to the Palmer Consent Decree.

3)      Precluding any evidence or testimony of other pending or former lawsuits filed against Chief Schmaderer and any testimony that the Chief retaliated against others.

4)      Precluding any testimony regarding or admission of the charge/finding/ investigation of Plaintiff's NEOC charge(s) of discrimination.

5)      Precluding the testimony regarding Plaintiff's termination from the City.

6)      Golden Rule argument.

7)      Exclusion of other witnesses from courtroom if not testifying under Federal Rule of Evidence 615.

## LAW AND ARGUMENT

Generally, Defendants' arguments for 1-5, listed above, have to do with challenges to specific evidence which are based on – or can be resolved on the basis of – the balance of the probative value of that evidence against its potential for unfair prejudice. Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) ... has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally

admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED.R. EVID. 403.

The Eighth Circuit Court of Appeals has explained that under Rule 403, the evidence in question's probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington,* 499 F.3d 854, 859 (8th Cir.2007) (quotations omitted). In *United States v. Myers,* 503 F.3d 676, 682 (8th Cir. 2011), the Court stated that "Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.' " quoting *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom. Smith v. Wade,* 461 U.S. 30 (1983). Unfairly prejudicial evidence, inviting a decision on an improper basis, includes evidence that is " 'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.' " *United States v. Adams,* 401 F.3d 886, 900 (8th Cir.2005) (quoting *United States v. Shoffner,* 71 F.3d 1429, 1433 (8th Cir.1995)); *accord United States v. Young,* 753 F.3d 757, 768–69 (8th Cir.2014) ("[T]he district court violated Federal Rule of Evidence 403 because the testimony was so inflammatory that its resulting unfair prejudice outweighed its probative value.").

The Eighth Circuit has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, also mitigates any potential for unfair prejudice. *See United States v. Lemon,* 239 F.3d 968, 972 (8th Cir.2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense, but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

In the following arguments relating to issues 1-5 herein, the foregoing 403 balancing test is what should guide this court in determining whether the challenged evidence has any probative value and if so, if that probative value outweighs the prejudice it would cause if admitted.

1.      **TESTIMONY OF WITNESSES REGARDING HARASSMENT OR DISCRIMINATION BY KN OR ANY OTHER PERSON(S) WITHIN THE OMAHA POLICE DEPARTMENT**

Defendants first request is for this court to preclude the testimony of any witness regarding discrimination or harassment by KN; specifically, the testimony of Staci Witkowski and her charges of discrimination filed in 2010/11 regarding KN and any unformalized claims by Lori Schenkelberg, Marlene Rieder (Novotny), Catherine Milone, and Stefanie Fidone. As the Court is now aware, based on the various Motions to Dismiss and Defendants' Motion for Summary Judgment, Plaintiff's claim of retaliation arises from a complaint originally made in 2010, wherein she alleges that KN (and others) engaged in some manner of discrimination or harassment of her right after she was appointed to the position of Captain. Plaintiff claims her 2010 complaint was not properly investigated and Defendants do not dispute that. Thereafter, in

2017, Plaintiff filed another complaint regarding the 2010 incident(s). Plaintiff has admitted that KN did not discriminate or harass her from 2011 to 2017. What happened in 2017 was the Plaintiff and KN were both up for a promotion to Deputy Chief and KN was ranked first on that promotional list. This is NOT the promotional process which is in dispute in this case.

In *Blair v. Willis,* 420 F.3d 823 (8th Cir. 2005), the Eighth Circuit Court of Appeals considered whether the district court had improperly denied the defendants' motion for new trial, which had been based on the plaintiff's counsel's repeated introduction of evidence concerning alleged misconduct of the defendants that was irrelevant to the plaintiff's remaining claims. 420 F.3d at 830. The appellate court observed,

> The line of questions posed by Blair's counsel over the course of the two-and-a-half-day trial emphasized irrelevant information having no bearing on the issues remaining in the case and demonstrated a persistent effort by [plaintiff's] counsel to get this information before the jury, despite repeated admonitions by the District Court. Although the District Court made a valiant attempt to rein in [plaintiff's] attorney, the improper and prejudicial questioning continued. We believe that the combined effect of these questions was to present to the jury an abundance of irrelevant evidence that had no bearing on the merits of the remaining claims and served only to prejudice the jury against [defendant].

*Id.*

The decision in *Blair* indicates that a trial court must be vigilant to exclude evidence that relates to dismissed or non-existent claims or misconduct of a party that is irrelevant or that is only marginally relevant to remaining claims, because of the prejudicial effect of such evidence is obvious. *See also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.,* 103 F.3d 1422, 1432–33 (8th Cir. 1997) (holding that evidence that was relevant only to a voluntarily withdrawn breach-of-contract claim should not have been admitted to determine damages owed under a termination clause, and noting that the error in admitting such evidence "caused, or contributed to, a prejudicial conclusion" by the jury).

Therefore, this Court should exclude evidence that is offered only to support claims or issues that are not relevant or that are only marginally relevant to the remaining claim of retaliation.

Plaintiff may attempt to argue that this evidence of KN's bad behavior is admissible as "background evidence." Although Defendants' recognize admissibility on these grounds may be appropriate in some limited circumstances, they should not be admissible in this instance. In this case, Plaintiff wants to submit a parade of horrible acts committed by a non-party long before the alleged retaliation took place. These complaints are not actionable because the time to file an administrative charge concerning those acts had run long before any charge was filed. The complaints against KN have little or no probative value, and whatever probative value they have is significantly outweighed by their potential for unfair prejudice – particularly in the form of distraction from the issues, misleading the jurors, wasting time, and inviting a decision on an improper basis. *See* FED.R.EVID. 403, Advisory Committee Notes. What KN did or didn't do and what, if any, action was taken against him by a different Chief, is not relevant to the matter at hand which is whether Todd Schmaderer retaliated against Plaintiff by not promoting her in 2018.

In addition, in Plaintiff's Complaint she alleges, in part, that the Omaha Police Department had a "history of unresolved of otherwise buried internal affairs complaints for sexual harassment and treating women disparately in the workplace." (See Complaint, ¶¶ 13-14). In Answers to Interrogatories, Plaintiff identified the following other women/complaints:

Shari Palmer – See Consent Decree discussion – late 1980's to early 1990s

Jen Hansen -   2017 complaint about a non-party

Cathy Martinec – backlash regarding negative evaluations she gave to made male

subordinates

Jennifer Fleming – civilian employee; 2016 – no formal complaint made

Amber Schlote –no date given; unclear what her complaint was or against who

Colene Hinchey – retired employee file a 2020 complaint against various high-ranking members of the Omaha Police Department because they would not allow her to file a crime report.

These matters are even more attenuated than those discussed above. But for the same reasons, these matters should not be discussed during trial.

2.      **EVIDENCE OF PALMER CONSENT DECREE**

Throughout Plaintiff's complaint and from time to time in other places, Plaintiff has mentioned the "Palmer Consent Decree." The Palmer Consent Decree arose from two lawsuits that arose in the early 1990s wherein the City of Omaha agreed to settle these two employment cases brought by female members of the Omaha Police Department alleging gender-based discrimination in the workplace and, in particular, in the promotional process within the Police Department. Generally, the settlement provided that the City would create a diversity committee; that the City would follow certain guidelines regarding hiring and promotions, including that all tests should be validated by a testing consultant; that the assessors must be trained; and that those parts of the tests should be audio-tape recorded. The agreement also established goals for the number of females hired. Although these goals were long-ago established and the City met all of the requirements, it never took action to have the agreement set aside. Therefore, the Consent Decree remains in place. There are many other provisions of the Consent Decree, but Defendants believe that Plaintiff wants to submit that Decree because her allegation is that the Chief violated a portion of the Decree about audio taping interviews. There is a dispute among the witnesses

- 7 -

about Plaintiff's tone, tenor and attitude during her 2017 interview (again, not the one for which she is challenging that process). Chief Schmaderer stated that Plaintiff had a poor attitude in the 2017 interview which he considered in 2018. The language in question from the Palmer Consent Decree states:

> 16.    All interviewers, assessors or evaluators used to evaluate any part of the hiring of promotion process shall be training and given sufficient guidelines to assure that the scoring is not arbitrary, capricious or susceptible to discriminatory treatment of females. The City shall make audio or video tape recordings of each interview and shall keep the same for four years after the date of the structured interview or scored interview, or assessment center.

Plaintiff's contention is that this language applies to the Chief's interview that is done after all of the scoring. Chief Schmaderer disputes Plaintiff's interpretation. The Chief stated during his deposition the following:

Q:    (By Mr. White) All right. And in fact you do agree that the Palmer consent decree required that such interviews [with the Chief] be recorded, correct?

A:    So it's my understanding the Palmer consent decree applies to the testing process and not the chief's interview which is not a graded format.

(Schmaderer deposition, 22: 1-7) The Chief went on to testify that as long as he had been chief, his interviews with candidates had NOT be recorded. (See Schmaderer deposition, 23:21-24:6). His interpretation is consistent with the plain language of the Consent Decree when read as a whole and not parsed word for word or sentence by sentence. Chief Schmaderer's position that only the "tested" portion of the hiring and promotional process is recorded is supported by the second sentence of paragraph 16, which talks about keeping the tape for a period of time after the "structured interview or scored interview, or assessment center." The parties could spend an entire day on the interpretation of the Consent Decree and bring in experts and witnesses from

- 8 -

the last 30 years that can talk about the meaning and intent of that language in the Consent Decree.

Plaintiff can certainly ask if the interview in question was recorded. But to ask the follow-up question or even infer that failure to do so violated some policy, rule, law or order takes it beyond relevance and crosses the line into prejudicial grounds. Again, such testimony would be unduly prejudicial because it would imply that the Chief did not record the interview for some nefarious reason. Indeed, his testimony was he had never recorded such interviews for the reasons set forth above. In addition, it would be a colossal waste of time to go down this rabbit hole regarding the Consent Decree. Even discussing the Consent Decree implies that the City of Omaha has pattern and practice of discrimination against women in the Police Department. That is not what this case is about. This is a retaliation case only. Allowing testimony regarding a 30-year-old Consent Decree would be a complete waste of the Court's and jury's time when this evidence has only minimal tangential relevance to the matter at hand – retaliation. In addition, the confusion to the jury would be very likely and very prejudicial. Therefore, weighing the factors definitely favors preclusion of this testimony.

## 3.    EVIDENCE OF OTHER RETALIATORY ACTS AND OR LAWSUITS

The City next seeks to exclude as irrelevant and unfairly prejudicial the following evidence of Chief Schmaderer's alleged retaliation of other City employees: (1) evidence of a lawsuit pending in Douglas County District Court captioned, *Merithew v. City,* Case No. CI 21-7036; and (2) any testimony from George Merithew (retired OPD lieutenant) regarding alleged retaliation by Chief Schmaderer; (3) any other current or former lawsuits or witnesses used for the purpose of showing a propensity by Chief Schmaderer to retaliate against employees.

First, any evidence regarding Mr. Merithew's lawsuit is not sufficiently similar to the issues in Plaintiff's retaliation claim to be admissible. The only overlap is that in 2017 both he and Plaintiff applied for the Deputy Chief position and "were ranked exceptionally low on their Training and Experience Results." (See Merithew Amended Complaint – not subject to any Protective Order). Unlike Plaintiff, Mr. Merithew alleges he was ranked poorly on that testing process because he did not agree with the Chief on a use of force review of the actions of another police officer in 2017 – not that he had complained about discrimination.

Mr. Merithew retired in 2020 after a series of serious disciplinary matters led to the Chief recommending him for termination. Such evidence/testimony is not evidence probative of whether it is more likely than not that the Chief retaliated against Plaintiff in 2018 for reporting sexual harassment by KN that actually took place in 2010.

Moreover, such evidence is certainly unfairly prejudicial, as it would be offered simply to show Chief Schmaderer in a bad light.

It is difficult to see how any of the evidence in the Merithew lawsuit (or testimony of Mr. Merithew about his claim of retaliation by the Chief) has much – indeed, any – probative value on the matters at issue in this case. *See* FED.R.EVID. 403; See also *United States v. Muhlenbruch,* 634 F.3d 987, 1001 (8th Cir. 2011) (explaining the Rule 403 balancing test).

Even if Plaintiff were to allege that inferences can be drawn from such evidence, those inferences would relate to Chief Schmaderer's character and reputation and that evidence would be inadmissible for such purposes. *See* FED.R.Evid. 404(a). Evidence of Chief Schmaderer's alleged tendency to be vindictive or hold a grudge, likewise, is inadmissible evidence of character or reputation. Even as "bad acts" evidence under Rule 404(b), such evidence is still amenable to the Rule 403 balancing test. The proposed evidence provides, at best, only very

weak inferences tying the failure to promote Plaintiff to Deputy Chief in 2018 to her complaint of sexual harassment by a non-party individual in 2010 (resurrected in 2017), smacking of little more than innuendo. FED.R.EVID. 403; see also *Batiste-Davis v. Lincare, Inc.,* 526 F.3d 377, 380 (8th Cir. 2008) (prior bad acts, including prior lawsuits, are not admissible to prove the character of a person).

On the other side of the Rule 403 scale, such evidence has a very substantial potential for unfair prejudice, because it would misdirect the jurors, enflame their passions in response to behavior of Chief Schmaderer and possibly others that has little relevance to Plaintiff's retaliation claim, and cause jurors to decide the case on the basis of their emotional response to the conduct described in the statements at issue, rather than on the basis of evidence concerning the alleged retaliation by Chief Schmaderer and the City against Plaintiff. *See* FED.R.VID. 403, Advisory Committee Notes; *United States v. Bell,* 761 F.3d 900, 912 (8th Cir. 2014); *Adams,* 401 F.3d at 900. This evidence must be excluded.

### 4.    NEOC FILE/CHARGE OF DISCRIMINATION

Evidence relating to Plaintiff's charge of discrimination with the Nebraska Equal Opportunity Commission, the investigation, and its determination are inadmissible. The Eighth Circuit Court of Appeals has ruled that exclusion under Rule 403 of the EEOC determination was not an abuse of discretion. *Johnson v. Yellow Freight Sys., Inc.*, 734 F.2d 1304 (8th Cir. 1984). The Eighth Circuit determined that administrative findings are not *per se* admissible under Rule 803(8) of the Federal Rules of Evidence, finding in that case that the EEOC determination was conclusory and admitting the report risked confusing and misleading the jury. *Id.* at 1309.

In this case, the probative value, if any, of evidence of the charge, the investigation, the

City's response and the outcome, of the administrative proceedings regarding Plaintiff's charge(s) of discrimination is substantially outweighed by its potential for prejudice and confusion and the possibility (or probability) that introduction of that evidence will allow trial of the relatively straightforward issue of retaliation to devolve into a "mini-trial" on the issues in and the reliability of the findings and conclusions in the administrative proceedings. *See id.; see also* FED.R.EVID. 403. In this case, there is no dispute that the Plaintiff exhausted her administrative remedies by filing her charges with the Nebraska Equal Opportunity Commission. There is no other basis for which to offer the charge, the investigation, the response by the City of Omaha or any finding. Such evidence would likely confuse the issues and the jury and is basically inadmissible hearsay. For all these reasons, any contents of the NEOC investigation must be excluded.

### 5.    PLAINTIFF'S TERMINATION FROM THE CITY

Chief Schmaderer terminated Plaintiff, effective July 22, 2022, from her position as a Captain with the Omaha Police Department subsequent to an Internal Affairs investigation. Plaintiff has already filed another lawsuit arising out of this termination and has requested arbitration under the Labor Agreement. In discussing this matter briefly with Plaintiff's counsel, the parties agree that Plaintiff cannot include this recent adverse employment action (termination) as part of her claim for damages under the present lawsuit. However, Defendants believe Plaintiff will argue that the facts surrounding her termination are admissible to help establish the Chief's intent to retaliate against Plaintiff.

Admitting evidence of Plaintiff's termination will open the door to introduction of evidence on collateral issues. Plaintiff's termination resulted from an internal investigation into allegations of improperly obtaining and disseminating confidential employment information

about other police officers. Plaintiff did not deny she obtained such information from her husband (then a Deputy Chief of Police) and others and then sent those emails to her (non-secure) home computer/server. Plaintiff alleges that she obtained and sent this information because it was necessary for the present lawsuit.

In effect, allowing this testimony will require a separate mini-trial on the matter of Plaintiff's termination, which is not at issue in this particular case. It will definitely prolong the trial and will undoubtedly confuse the issues for the jury. See *Easley v. Am. Greetings Corp.,* 158 F.3d 974, 976 (8th Cir. 1998).

The Defendants would be amenable to an agreed upon statement to the jury that "Plaintiff was terminated on July 22, 2022." Defendants would suggest some type of limiting statement by the Court to the effect that, "Plaintiff's termination is not a matter at issue in this case, and jurors should not consider her termination by the City of Omaha in their deliberations of the issues tried in this case."

### 6.    GOLDEN RULE

Defendants request that Plaintiff not be permitted to ask the jury to put themselves in her shoes and give her what they would want. Allowing such an argument will cause the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Lovett v. Union Pacific RR. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000).

### 7.    EXCLUSION OF WITNESSES FROM COURTROOM

Rule 615 of the Federal Rules of Evidence allows for the exclusion of witnesses from the courtroom so that they cannot hear other witnesses' testimony. The Defendants seek to invoke this rule in the trial of this matter. Defendants understand this will apply to their witnesses as well.

## CONCLUSION

For all the reasons set forth herein, Defendants' Motion in Limine must be granted and the requested evidence be precluded at trial.

DATED this 1st day of August, 2022.

CITY OF OMAHA, *et al.,* Defendants

By   s/Michelle Peters           
      MICHELLE PETERS, No. 20021
      Deputy City Attorney
      1819 Farnam Street, Suite 804
      Omaha, NE 68183
      Telephone:  402/444-5115
      E-mail:  michelle.peters@cityofomaha.org
      Attorney for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(3), I hereby certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Office Word 2010, this document contains 4229 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

s/Michelle Peters           
Deputy City Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2022, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION IN LIMINE** with the Clerk of the Court using the CM/ECF system which sent notification to such filing to the following:  Tom White and Amy Jorgensen, WHITE AND JORGENSEN, 3114 St. Mary's Ave., Omaha, NE 68105.

/s/Michelle Peters           
