IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATHERINE BELCASTRO-GONZALEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF OMAHA, a Municipal Corporation; and TODD SCHMADERER, Chief of Police of the Omaha Police Department, in his official and individual Capacity;<br><br>Defendants. | 8:19CV572<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the defendants' City of Omaha's and Todd Schmaderer's (collectively "the City") motion for summary judgment. Filing No. 85. This is an action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The plaintiff alleges that she was denied a promotion to the rank of Deputy Chief in June 2018 in retaliation for her exercise of Title VII rights. She alleges the City retaliated against her for filing complaints of harassment and charges of discrimination.

The City moves for summary judgment, arguing the evidence shows the plaintiff cannot establish a prima facie case of retaliation. They first argue that the plaintiff cannot show she engaged in a protected activity because she did not file a charge of discrimination in connection with the complaint that she filed in 2010. They contend that "[T]to allow Plaintiff to resurrect her 2010 complaint as a new 'protected activity' that would give rise to a new cause of action usurps the whole protocol [requiring a complainant to file a charge of discrimination within 300 days] set forth in statutory and case law." Filing No. 86, Defendants' Brief at 11. They argue that "complaining that [Belcastro-Gonzalez's] complaint was not properly investigated, that is not protected activity as a matter of law."

1

Filing No. 99, Defendants' Reply Brief at 11. They next argue that they have set forth legitimate, nonretaliatory reasons for failing to promote the plaintiff and the plaintiff has not presented evidence that those reasons were pretextual.

In response, the plaintiff states that she relies on the following as protected activities: (1) filing her 2017 complaint with the Mayor regarding her contention that her 2010 complaint had not been investigated and requesting further or completed investigation of Kerry Neumann for harassment in the workplace—the subject of her 2010 complaint; (2) in the months following the plaintiff's 2017 complaint to the Mayor, she participated in the City's "investigation," met with Human Resources Manager Tim Young, and raised concerns that his investigation was not properly conducted; (3) in January of 2018, the plaintiff was passed over for Acting Deputy Chief and on March 26, 2018, she filed a Charge of Discrimination with the NEOC on that basis; and (4) she continually engaged in activity that was under the law protected from retaliation up to and after she was passed over for promotion to Deputy Chief. See Filing No. 95, Plaintiff's Brief at 33–34. She argues that she can rely on background facts to support her timely retaliation claim and those background facts include complaints of harassment by a male officer in 2010 that were not properly investigated. Id. at 39–40 Also, she did file a Charge of Discrimination after she was denied the Acting Deputy Chief position on January 1, 2018. Id.

II. FACTS

The following facts are gleaned from the Order on Pretrial Conference, Filing No. 105 at 1–2; the parties respective statements of uncontroverted facts, Filing No. 86, Defendants' Brief at 1–6, Filing No. 95, Plaintiff's Brief at 2–30, and Filing No. 99,

Defendants' Reply Brief at 3–10; and from the evidence submitted in connection with this motion, Filing Nos. 87, 96, and 100, Indices of Evid.[1]

The Plaintiff, Katherine Belcastro-Gonzalez, was employed as a Captain by the City of Omaha Police Department at all times relevant to this action. Defendant City of Omaha was and is a political subdivision within the State of Nebraska. The City of Omaha qualifies as an "Employer" under 42 U.S.C. § 2000e. Defendant Todd Schmaderer is employed by the City of Omaha Police Department was the plaintiff's superior for the duration of the matters at issue herein. Todd Schmaderer became Chief of Police in August 2012. On or about March 26, 2018, and August 9, 2018, plaintiff Katherine Belcastro-Gonzalez filed charges of discrimination with the Nebraska Equal Opportunity Commission and EEOC against the defendants, satisfying the procedural requirements of 42 U.S.C. § 2000e-5(a)-(e).

Belcastro-Gonzalez had filed an allegation of discrimination against then Lieutenant Kerry Neumann (sometimes referred to as "KN") with the Omaha Police Department in 2010 that was not properly investigated. Another female police officer, Stacy Witkowski, also filed a complaint of workplace harassment. Filing No. 96-8, Deposition of Staci Witkowski at 2–3. In 2010, Alex Hayes was the Chief of Police. Defendant Todd Schmaderer was the Deputy Chief in command of Plaintiff and subsequently for Kerry Neumann ("KN") once he was promoted to Captain in August of 2010. The City does not dispute that Schmaderer may have looked at Stacy Witkowski's 2010 complaint.[2] With regard to Lieutenant Witkowski's 2010 complaint, Chief Hayes authorized an investigation against Kerry Neumann. The parties agree that both the

---

[1] Facts set forth without a citation to the record are agreed facts.
[2] The City contends, however, that this fact is irrelevant.

3

plaintiff's 2010 complaint and Stacy Witkowski's 2010 complaint were not properly investigated.

The plaintiff disputes that Todd Schmaderer was not involved in the internal investigation filed in 2010 by plaintiff except to the extent that he may have sent the complaint up the chain of command. Chief Alex Hayes initialed the disposition of that complaint which stated, "Although not sustained, [KN] was verbally spoken to by me. ANH." From 2011 to 2017, the plaintiff did not have any other problems with KN. The other female officers continued to have problems with Kerry Neumann. Filing No. 96-8, Ex. 14, Deposition of Staci Witkowski at 18–20. Lieutenant Stefani Fidone, who worked with then Lieutenant Kerry Neumann who later became Lieutenant Fidone's captain, went to Deputy Chief Mary Newman about the issues she was having with Kerry Neumann, including her perception that he did not like women.[3] Filing No. 96-2, Ex. 8, Deposition of Stefanie Fidone at 7–9.

In 2015, both Plaintiff and KN (and others) applied for the position of Deputy Chief and from that testing process promotions were made in 2017. The plaintiff did not file a Charge of Discrimination for improper discrimination as a result of the two Deputy Chief promotions off of that list.

The record shows the plaintiff took action in 2017 when Internal Affairs Captain Tom Shaffer had approached Deputy Chief Greg Gonzalez, the plaintiff's husband, and told him that two books (of the Belcastro-Gonzalez and Witkowski complaints) had been located and they were found hidden under a desk. Filing No. 96-1, Ex. 7, Deposition of Katherine Belcastro-Gonzalez at 54–56; Filing No. 96-10, Ex. 16, Dep. Ex. 1, Excerpts of

---

[3] The City contends that whether or not other members of the Omaha Police Department allegedly had problems with KN is not appropriate evidence in this case.

4

Young Investigation File at 170. Both the plaintiff and Lieutenant Witkowski filed complaints in 2017 in which both complained that their two 2010 internal affairs complaints were not properly investigated. The plaintiff submitted her April 2017 complaint to the Mayor's office. It was appropriate for the plaintiff to file her 2017 complaint with the Mayor under the City Executive Order.

Human Resources Director Tim Young undertook his investigation of the plaintiff's complaint in 2017, but the plaintiff disputes that he generally found no misconduct on the part of the male employee, KN. Filing No. 96-10, Young Investigation File at 169 (stating "the investigation found conflicting statements by multiple parties . . . [and] could not prove or disprove [Belcastro-Gonzalez's] allegations."). As part of his investigation, Young interviewed 19 people, male and female, sworn officers and civilian employees, including 15 women and that Young issued his finding on September 1, 2017. Filing No. 96-9, Ex. 15, Deposition of Tim Young ("Young Dep.") at 31–32. Young testified that in his investigation he was going to look into the current conduct of Kerry Neumann or his conduct in the past to see if it is still occurring. Id. at 38–39. The plaintiff disputes the defendant's contention that Chief Schmaderer did not participate in Young's investigation into the plaintiff's complaints and was not involved in the outcome. Tim Young testified that he "probably had some conversation" with Chief Schmaderer about the plaintiff's complaint. Filing No. 87-4, Young Dep. at 81

Kerry Neumann was promoted to Deputy Chief on September 27, 2017. There is evidence that Chief Schmaderer promoted him in spite of being aware of the harassment complaints that Lieutenant Witkowski and the plaintiff had previously lodged against Kerry Neumann. Filing No. 96-14, Investigation File of Complaint of Staci Witkowski

5

("Witkowski File") at 1972; Filing No. 96-13, 2010 Investigation File of Complaint of Katherine Belcastro-Gonzalez at 1874–95. Chief Schmaderer knew these investigations were not properly conducted. Filing No. 96-6, Deposition of Todd Schmaderer ("Schmaderer Dep.") at 89–90, 92–93. Chief Schmaderer also promoted Kerry Neumann despite his receipt of Tim Young's September 1, 2017, report in which Young stated that there was testimony from female officers that was consistent with plaintiff's claims of disparate treatment. Filing No. 96-9, Young Dep. at 41–42; Filing No. 96-10, Young Investigation File at 168–69. Chief Schmaderer also promoted Kerry Neumann after he had dismissed without prejudice the case filed by Lieutenant Witkowski against Kerry Neumann. Filing No. 96-6, Schmaderer Dep. at 98–100; Filing No. 96-14, Witkowski File at 1972.

In 2018, two additional Deputy Chief positions became available due to retirements. The plaintiff applied for those open positions. After the testing process, Plaintiff ranked first out of eight candidates. All eight candidates were interviewed and the Chief selected candidate #2 (Ken Kanger, white male) and #5 (Michele Bang, white female) on or about June 25, 2018. The plaintiff suffered an adverse employment action when Chief Schmaderer did not promote her to the rank of Deputy Chief on June 27, 2018.

Tim Young testified that there was a lot of "noise" about Belcastro-Gonzalez, and he knew that her filing of a complaint with the Mayor really "ruffled some feathers" in the Omaha Police Department. Filing No. 96-9, Young Dep. at 70–71. This was the first time that Chief Schmaderer had passed over for promotion a person who was number 1 on the list for Deputy Chief. Filing No. 96-6, Schmaderer Dep. at 184–85. Chief Schmaderer

6

made the sole decision to promote Ken Kanger and Michele Bang to Deputy Chief and to not promote Plaintiff.

The plaintiff disputes all of the reasons the Chief articulated as to why he did not promote the plaintiff to the position of Deputy Chief. The plaintiff submits evidence tending to show that the proffered reasons were pretextual.

II. LAW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477

7

U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex Corp., 477 U.S. at 324). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Id.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." Id. at 1043 (quoting Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010)). In a discrimination case, when the record on summary judgment is fully developed, the "court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination *vel non*." Id. at 1054 (Colloton, J., concurring).

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII 'investigation, proceeding, or hearing.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)). "The term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." Id. "The

antiretaliation provision, unlike the substantive [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment."[4] *Id.* at 64. A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir. 2007). "Under this framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: '(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events.'" *Id.* at 1043 (quoting *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a nonretaliatory reason for the adverse employment action. *Id.* "If the defendant can show a legitimate, non-retaliatory reason for its actions, the burden returns to the plaintiff who 'is 'then obliged to present evidence that (1) creates a question of fact as to whether [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation.'" *Id.* (quoting *Logan v. Liberty Healthcare Corp.*, 416

---

[4] The substantive provision requires that violations involve tangible employment actions, limiting the scope of that provision to actions that affect employment or alter the conditions of the workplace such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 62; 42 U.S.C. § 2000e-2(a).

9

F.3d 877, 880 (8th Cir. 2005)).  The actual evidentiary burden that a plaintiff must meet at the prima facie stage is minimal.[5]  *Id.*

Under 42 U.S.C. § 2000e-3(a), the "unlawful intentional discrimination" of retaliation takes two forms, making it "an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (quoting 42 U.S.C. § 2000e–3(a)) (noting the two are known as the "opposition clause" and the "participation clause").  The actions covered by these two clauses are protected activity.  See *id.*  "To establish a prima facie case of unlawful opposition-clause retaliation under § 2000e-3(a), [a plaintiff] must present evidence that [he or she] opposed a practice made unlawful."  *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098, 1101 (8th Cir. 2018).  "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity."  *Id.* (agreeing with the district court that "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation.").  The Eighth Circuit interprets Crawford to mean that

> [S]omeone who has substantiated a complaint of a civil rights violation has demonstrated opposition to that violation and acted to vindicate the rights of minorities.  Such an individual should therefore receive the same

---

[5]  "[T]the burden-shifting framework is merely an analytical construct; the ultimate burden of proving retaliation remains at all times with the plaintiff; and the level of proof required to show causation is less at the prima facie stage than at the final stage of the *McDonnell Douglas* analysis.  *Stewart*, 481 F.3d at 1043.

10

protection against retaliation as the person who filed the original complaint. If employees who give evidence or respond to questions during internal inquiries into alleged discrimination are not protected from retaliation, it would impede any internal efforts to address discrimination.

*Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013).

To create a causal connection, the plaintiff must demonstrate a causal link. *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002). To demonstrate a causal link, "the employee must prove that an employer's retaliatory motive played a part in the adverse employment action." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (quotations omitted). Evidence that gives rise to an inference of a retaliatory motive is necessary to demonstrate a causal link. *Kipp*, 280 F.3d at 897. However, demonstrating this evidence alone is sufficient to demonstrate a causal link. *Id.*

III. DISCUSSION

The Court rejects the City's contention that Belcastro-Gonzalez's activities are not protected activities for the purpose of a Title VII retaliation claim as a matter of law. Belcastro-Gonzalez informed her employer of acts of harassment which is protected conduct under Title VII. Her complaints in 2010 and 2017 expressed opposition to prohibited gender-based discriminatory conduct—workplace harassment. The City falsely separates the plaintiff's expressed opposition to gender discrimination in the 2010 and 2017 complaints from her dissatisfaction with the City's investigation, as if the two actions were not linked. It narrowly characterizes the allegedly protected activity at issue as opposition to the City's investigation procedure, whereas the lack of a proper investigation is evidence that is relevant to the workplace harassment claims and indicative to the City's motives. Belcastro-Gonzalez's opposition (in all of its manifestations) is to the City's gender-discriminatory policies and conduct. She clearly

11

participated in investigations of allegedly discriminatory conduct. The protected activities in this case are a continuing course of conduct relating to Belcastro-Gonzalez's opposition, on her own behalf and on behalf of others, to Kerry Neumann's alleged harassment of women in the workplace, beginning with a complaint in 2010, continuing to a challenge in 2017 to the improper investigation of that claim (as well as to the City's alleged failure to comply with a consent decree), then to her filing an EEOC claim on being passed over for Acting Deputy Chief. The 2010 complaint, and the City's acknowledged failure to investigate the complaints provides background and context for the failure to promote Belcastro-Gonzalez. There are triable issues of fact on whether Chief Schmaderer denied her a promotion, even though she ranked first on the list, in retaliation for her opposition to the City's policies.

There is circumstantial evidence from which a jury could determine that the Chief was aware of Belcastro-Gonzalez's protected activity and took the adverse employment action of not promoting Belcastro-Gonzalez closely enough in time as to justify an inference of retaliatory motive. There is evidence that there was "noise" about the complaint filed with the Mayor in 2017. There is testimony that Belcastro-Gonzalez "ruffled feathers" by filing that complaint. Belcastro-Gonzalez filed a complaint of discrimination in March 2018 and was passed over for promotion in June 2018. There is also evidence that the City took other retaliatory actions against Belcastro-Gonzalez, for example, by opening an investigation into her use of overtime.

There are genuine issues of fact on whether the City's stated reasons for her nonpromotion were pretextual. Inferences of discriminatory motives could arise from the fact the Chief Schmaderer generally promoted people who were first did not do so when

Belcastro-Gonzalez placed first on the list. The fact that Belcastro-Gonzalez's test was rescored could also raise an inference of unequal treatment.

The Court finds the City has not shown it is entitled to summary judgment in this action. There are genuine issues of material fact on the plaintiff's retaliation claim. A reasonable fact finder could conclude that the defendants' stated reasons for not promoting Belcastro-Gonzalez to the Deputy Chief position were pretexts for retaliation. The determination will involve assessments of credibility. Accordingly,

IT IS ORDERED:

1. The defendants' motion for summary judgment (Filing No. 85) is denied.

Dated this 17th day of August, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge