IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATHERINE BELCASTRO GONZALEZ, ) | CASE NO. 8:19CV572 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **PLAINTIFF'S TRIAL BRIEF** |
| CITY OF OMAHA, a Municipal ) | |
| Corporation, TODD SCHMADERER, ) | |
| Chief of Police of the Omaha Police ) | |
| Department, in his official and individual ) | |
| Capacity ) | |
| ) | |
| Defendants. ) | |

COMES NOW the Plaintiff, by and through her attorneys, and hereby submits her trial brief to the Court.

## STATEMENT OF THE CASE

Plaintiff, Katherine Belcastro Gonzalez, filed a lawsuit alleging that Defendants engaged in unlawful employment practices prohibited by Title VII and the Nebraska Fair Employment Practices Act as a result of being subjected to retaliation.

## STATEMENT OF FACTS

The Plaintiff had set forth the facts of this case in detail in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Rather than reiterate all of those facts herein, Plaintiff refers the Court to pages 2-30 of *Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Filing No. 95*.

## I.

## APPLICABLE LAW

Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e by denying her a promotion to the rank of Deputy Chief in June 2018 in retaliation for her exercise of her Title VII rights. The anti-retaliation provision of Title VII forbids employers from discriminating against an employee because he or she has opposed or protested a practice forbidden by Title VII or has made a charge, testified, assisted, or participated in any Title VII investigation, proceeding or hearing. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006).

Although the plaintiff bears the ultimate burden of proving an actionable claim of retaliation, the burden-shifting analytical frame work of *McDonnell Douglas Corp. V. Green*, 411 U.S., 792, 802) (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) applies to claims of retaliation. The plaintiff must first come forward with evidence establishing a prima facie case of discrimination. The plaintiff's evidence must show: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. *Stewart v. Indepen. Sch. Dist. No. 196*, 481 F3d 1034, 1043 (8th Cir. 2007) (quoting *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)).

Upon establishing a prima facie case, the burden shifts to the defendant to demonstrate a non-retaliatory reason for the adverse employment action. *Id.* If the defendant shows legitimate, non-retaliatory reasons for its actions, the burden again returns to the plaintiff who must "present evidence that (1) creates a question of fact as to whether the [defendant's] reason was pretextual and (2) creates a reasonable inference that [defendant] acted in retaliation." *Id.* (quoting *Logan v. Liberty Healthcare Corp.*, 416 F.3d 880 (8th Cir. 2005).

Two forms of unlawful retaliatory discrimination are proscribed by 42 U.S.C. § 2000 e-

3(a): retaliatory acts by the employer taken because the plaintiff opposed any practice made unlawful by Title VII and retaliatory acts taken because the plaintiff made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. *Crawford v. Metro Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (noting that the two statutory retaliation claims are referred to as the "opposition clause" and the "participation clause" and are collectively referred to as "protected activity"). Thus, both a person who files a complaint of discrimination and a person who "substantiates" a claim of discrimination by providing evidence or responding to inquiries into alleged discrimination who engage in statutorily "protected activity" are protected against acts of discriminatory retaliation under Title VII. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013).

After the plaintiff shows that he or she engaged in "protected activity", the plaintiff must demonstrate that an "adverse employment action" was taken against him or her. However, in a retaliation action, a plaintiff must only show that the employer's retaliatory action would be perceived by a reasonable employee as materially adverse, that is, it might well dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry, Co. v. White,* 548 U.S. 53, 68 (2006). (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). In other words, in Title VII retaliation cases, it is sufficient, but not necessary, for a plaintiff to demonstrate that the employer's action(s) affected the terms and conditions of the plaintiff's employment to meet her burden of showing that an employer engaged in prohibited 'discriminatory action.' *Id.*

To demonstrate the necessary causal connection, the plaintiff must show only that the retaliatory acts were at least in part because plaintiff engaged in a protected activity. Evidence

from which a retaliatory motive can be inferred is sufficient to demonstrate a causal link between the adverse employment action and the protected activity. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006); *Kipp v. Missouri Highway & Transp. Commn.*, 280 F.3d 393, 897, (8th Cir. 2002). However, proof of a retaliatory motive is not the only way a plaintiff may establish a causal link. Alternatively, the necessary causal link may be established through temporal proximity between the protected activity and the adverse employment action. *Davison v.City of Minneapolis,* 490 F.3d 648, 657 (8th Cir, 2007). Generally, "more than a temporal connection between [a] protected activity and an adverse employment action is required to show [retaliation]... ." *Buettner v. E. Arch Coal Sales Co.*, 216 F.3d 707, 716 (8th Cir. 2000). However, this rule gives way when ""circumstantial evidence – that the employer was aware of the protected activity and that adverse employment action "followed the protected activity so closely in time as to justify an inference of retaliatory motive" - [is] sufficient to establish the requisite causal connection ... ."" *Jin Ku Kim v. Nash Finch Co.*, 123 F.3d 1046, 1061 (8th Cir. 1997). The temporally proximate time frame may be further shortened by evidence showing that the employer quickly took escalating adverse and retaliatory action against a plaintiff after he or she engaged in protected activity. *Kasper v. Federated Mut. Inc. Co*., 425 F.3d 496, 503 (8th Cir. 2005).

## II.

### PLAINTIFF ENGAGED IN STATUTORILY PROTECTED ACTIVITY

This Court ruled that Plaintiff engaged in statutorily protected activities. *Memorandum and Order on Defendants' Motion for Summary Judgment at 11-12 (August17, 2022)*. "The Court rejects the [Defendant] City's contention that [Plaintiff] Belcastro-Gonzalez's activities are

not protected activities for the purpose of a Title VII retaliation claim as a matter of law. [Plaintiff] informed her employer of acts of harassment which is protected activity under Title VII. Her complaints in 2010 and 2017 expressed opposition to prohibited gender-based discriminatory conduct-workplace harassment. The [Defendant] City falsely separates the plaintiff's expressed opposition to gender discrimination in the 2010 and 2017 complaints from her dissatisfaction with the [Defendant] City's investigation, as if the two were not linked. ... [Plaintiff] Belcastro-Gonzalez's opposition (in all of its manifestations) is to the [Defendant] City's gender-based discriminatory policies and conduct. She clearly participated in investigations of discriminatory conduct. The protected activities in this case are a continuing course of conduct relating to [Plaintiff] Belcastro-Gonzalez's opposition on her own behalf and on behalf of others, to Kerry Neumann's alleged harassment of women in the work place, beginning with a complaint in 2010, continuing to a challenge in 2017 to the improper investigation of that claim (as well as to the [Defendant] City's alleged failure to comply with a consent decree), then to her filing an EEOC claim on being passed over for Acting Deputy Chief. The 2010 complaint and the City's acknowledged failure to investigate the complaints provides background and context for the failure to promote Belcastro-Gonzales. There are triable issues of fact on whether [Defendant] Chief Schmaderer denied her a promotion, even though she ranked first on the list, in retaliation for her opposition to the City's polices." *Id.* Additionally, Plaintiff protested the discriminatory treatment of other female officers and the failure to investigate the claims of discrimination made by her colleague, Lt. Witkowski, in her 2010 complaint.

## III.

## PLAINTIFF SUFFERED AN ADVERSE EMPLOYMENT ACTION

The Court has ruled that Plaintiff "suffered an adverse employment action when [Defendant] Chief Schmaderer did not promote her to the rank of Deputy Chief on June 27, 2018." *Memorandum and Order on Defendants' Motion for Summary Judgment at 6 (August17, 2022).* Plaintiff was not promoted to either of the two open positions as Deputy Chief despite ranking first of eight candidates after testing for the promotion. After interviews with all eight candidates, Defendant Schmaderer selected candidates that ranked lower than Plaintiff. This was the first time Defendant Schmaderer ever passed over for promotion a person who was number 1 on the list for Deputy Chief. Instead, Defendant Schmaderer selected candidates who ranked number 2 (Ken Kanger, white male) and number 5 (Michelle Bang, white female) on the list. *Id.*

## IV.

## DEFENDANTS DID NOT PROMOTE PLAINTIFF IN RETALIATION FOR HER CONTINUED OPPOSITION TO DEFENDANTS' DISCRIMINATORY POLICIES

The Defendants' failure to promote Plaintiff is closely proximate enough in time to her continued opposition to the Defendants' discriminatory policies to justify an inference of Defendants' retaliatory motive in denying her the promotion to Deputy Chief in June 2018. Moreover, there is abundant evidence showing that the real reason for not promoting Plaintiff to Deputy Chief was in fact her ongoing and continued resistance and opposition to gender discrimination in the workplace. Both are sufficient to establish the necessary causal link between Plaintiff's protected activities and an adverse employment action. *See Memorandum and Order on Defendants' Motion for Summary Judgment at 12-13 (August17, 2022).*

Although temporal proximity is usually insufficient by itself to establish a casual

connection, in the present case there is circumstantial evidence that Defendant Schmaderer was aware of Plaintiff's protected activity and took the adverse employment action of not promoting her so closely in time as to justify an inference of retaliatory motive for three reasons. First is the shortness of the temporal proximity on the facts. Plaintiff filed the Charge of Discrimination with the NEOC on March 26, 2018. Defendant Schmaderer failed to promote Plaintiff to the rank of Deputy Chief on June 27, 2018. This short time frame is only three months. Second, Defendant Schmaderer was aware of Plaintiff's protected activity because there was a lot of "noise" regarding Plaintiff's 2017 complaint filed with the Mayor concerning the failure to properly investigate her original 2010 NEOC Charge alleging gender discrimination in the workplace. Third, the already short gap between her protected activity of filing a Charge of Discrimination with the NEOC on March 26, 2018 and the adverse employment on June 27, 2018 can be further shortened because Defendants took escalating adverse and retaliatory action against her in two ways. First, Defendant Schmaderer verbally authorized a formal investigation with regard to Plaintiff's overtime on June 13, 2018, just two weeks before the adverse employment action -- his decision not to promote her to Deputy Chief-- was taken. Defendant Schmaderer instigated the investigation in spite of the fact that other officers had substantially more overtime than Plaintiff and, tellingly, he authorized an overtime investigation into **only** Plaintiff's overtime. Second, after Plaintiff ranked number 1 on the promotional list for Deputy Chief, Tim Young, Human Resources Director for the City, sent the list back to have it scored under the standardized scoring because he anticipated questions from the Mayor's office to the Police Chief so that he was prepared to show integrity of the process. Plaintiff scored number 1 both ways. Tim Young also testified that there was a lot of "noise" about Kathy and he knew that Plaintiff filing the

complaint with the Mayor really ruffled some feathers in the Omaha Police Department and that is why he sent the test back to be rescored.

There is abundant evidence showing that the reason why Plaintiff was not promoted to Deputy Chief was, at least in part, because she objected to gender discrimination in her workplace. Plaintiff and her colleague, Lt. Witkowski, filed their Complaint with the Mayor's office on April 29, 2017. Plaintiff and Lt. Witkowski subsequently were interviewed by Tim Young of the Mayor's office on June 7, 2017 for this investigation. The investigation was concluded on September 1, 2017. Plaintiff subsequently filed a Charge of Discrimination with the NEOC on March 26, 2018 when she was passed over for promotion to Acting Deputy Chief on January 1, 2018. Plaintiff ranked number 1 on the promotional list on June 8, 2018. Tim Young testified that there was a lot of "noise" about Plaintiff, that he knew that Plaintiff's filing the complaint with the Mayor really ruffled some feathers in the Omaha Police Department and that it was the reason he sent the promotional list back to be rescored. Deputy Chief Gray also testified that there was a lot of noise about Plaintiff ranking number 1 on the promotional list. After Plaintiff ranked number 1 on the promotional list, Defendant Schmaderer verbally authorized a formal investigation regarding Plaintiff's overtime on June 13, 2018. Even though there were other officers who had substantially more overtime than Plaintiff, Plaintiff was the only one whose use of overtime Defendant Schmaderer ordered be internally investigated. Defendant Schmaderer never passed over the number one ranked candidate for promotion to Deputy Chief until he passed over Plaintiff not once, but twice, when he promoted Michelle Bang and Ken Kanger to Deputy Chief over Plaintiff. Defendants' stated reasons for not promoting Plaintiff contain numerous falsehoods and are clearly pretextual.

8

## V.

### THE DEFENDANTS' PROFFERED REASONS FOR FAILING TO PROMOTE PLAINTIFF TO THE RANK OF DEPUTY CHIEF ARE MERE PRETEXT FOR DISCRIMINATION/RETALIATION

At last count, the Defendants offered ten non-discriminatory reasons for the failure to promote Plaintiff to the rank of Deputy Chief. In her Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff demonstrated that these reasons are mere pretext for discrimination and retaliation. *Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Filing No. 95, at 19-30 and 47-55.* Plaintiff's evidence at trial will similarly show that the real reason for failing to promote her to the rank of Deputy Chief was based, at least in part, because she engaged in the Title VII protected activity of objecting to discrimination in the workplace. Rather than reiterate the Defendants' proffered reasons for failing to promote Plaintiff and the exhaustive evidence showing that the majority of the proffered reasons are demonstrably false and others mere pretext, Plaintiff refers the Court to pages 19-30 and 47-55 of *Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Filing No. 95.*

## CONCLUSION

Based on the foregoing, the evidence will establish that Defendants engaged in unlawful retaliation prohibited by Title VII and the Nebraska Fair Employment Practices Act as a result of Plaintiff being passed over for promotion to Deputy Chief. Accordingly, Defendants are liable for damages suffered by Plaintiff as a result of the Defendants' retaliation.

KATHERINE BELCASTRO GONZALEZ, PLAINTIFF

BY:   s/Thomas M. White
Thomas M. White #17452
Amy S. Jorgensen, #23215
WHITE & JORGENSEN
3114 St. Mary's Avenue
Omaha, Nebraska 68105
(402) 346-5700

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that the above and foregoing document was served upon Michelle Peters, City of Omaha, 1819 Farnam Street, Suite 804, Omaha, NE 68183, by e-mailing the same on this 29th day of August, 2022.

  s/Thomas M. White

10