IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KATHERINE BELCASTRO-GONZALEZ,

Plaintiff,

vs.

CITY OF OMAHA, a Municipal Corporation; and TODD SCHMADERER, Chief of Police of the Omaha Police Department, in his official Capacity,

Defendants.

8:19CV572

MEMORANDUM AND ORDER

This matter is before the Court on the defendants', City of Omaha's and Todd Schmaderer's (collectively, "the defendants" or "the City"), Motion for Judgment as a Matter of Law or for a New Trial, Filing No. 140, Motion for Hearing, Filing No. 154, and on the plaintiff's motion to strike the defendant's index, Filing No. 162. This is an action for retaliation in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

This matter was tried to a jury September 6–9, 2022. The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $700,000.00; representing $680,000.00 in backpay and benefits, and $20,000.00 in emotional distress damages. Filing No. 127, Verdict.

The City moves for judgment as a matter of law and/or a new trial based on allegations of juror misconduct that came to its attention after the verdict. Filing No. 140. The City contends that Omaha Police Department Deputy Chief, Tom Shaffer, a witness at the trial, learned during the trial that a former police officer had spoken to a female juror, believed to likely be the foreperson, about the trial. Filing No. 156 at 2. The City

1

also challenges the Court's admission of the testimony of witness Stacy Witkowski. *Id.* It argues Witkowski's testimony about complaints she lodged against Kerry Neumann in 2010–11 was not relevant to any claims of retaliation against Todd Schmaderer. *Id.* Further, the City takes issue with the Court's ruling that it was bound by the response it provided to the Nebraska Equal Opportunity Commission about its reasons for failing to promote the plaintiff. *Id.* at 3.

In support of its contentions of juror misconduct, the City submits the affidavit of Deputy Chief Thomas Shaffer, who states:

> 4. On or about September 6, 2022, I was subpoenaed to testify in the trial of this matter.
>
> 5. The following day, September 7, 2022, I received a text message from a former Omaha Police officer by the name of Oscar Dieguez, who made a comment about my testimony.
>
> 6. Mr. Dieguez advised me that he had a female friend that was on the jury.
>
> 7. I advised Mr. Dieguez that after the trial I would like to know what the juror(s) said about how I did because I had never testified in a civil case before.
>
> 8. After the jury returned its verdict in favor of the Plaintiff, I reached out to Mr. Dieguez on September 13, 2022.
>
> 9. Mr. Dieguez advised me that the juror believed that I was sincere.
>
> 10. Mr. Dieguez indicated that the jurors didn't like how things were handled after the errors were discovered and that they "had to send a message" to the City.

Filing No. 157-1 at 1–2, Affidavit of Thomas Shaffer. Defendants admit in their brief that "[t]he exact discussion(s) is unknown" of this alleged juror communication Filing No. 156 at 5.

At trial, the Court admitted the testimony of Stacy Witkowski, over the City's objection, for the limited purpose of showing that Omaha Police Chief Todd Schmaderer knew of earlier of complaints against, or gender-based issues with, then-Captain Kerry

2

Neumann and nevertheless promoted him to Deputy Chief.[1]  Filing No. 147 at 37–38, Trial Tr. (Vol. II).  The Court instructed counsel that "if there are objections as we go along, I'll rule on them as the testimony comes in."  Id. at 39.  No objections were interposed. Id. at 39–54.  Moreover, Staci Witkowski's testimony was cumulative to other testimony relating to the 2010–11 complaints.  Tim Young, the City's former Human Relations Director, testified, without objection, that Kerry Neumann was an "equal opportunity asshole," was difficult to work for, and that some of the women Young interviewed testified that Kerry Neumann had discriminated against women.  Filing No. 148 at 130, Trial Tr. (Vol. III).

With respect to the issue of the Nebraska Equal Opportunity Commission ("NEOC") proceedings, the subject of the preclusive effect of the City's NEOC response was the subject of some discussion at trial.  *See, e.g.*, Filing No. 147 at 71–72; 170–73, Trial Tr. (Vol. II).  The Court did not rule that the defendants were bound by the reasons it gave the NEOC for failing to promote Belcastro-Gonzalez; the plaintiff withdrew its request for such a determination.  Id. at 72, Trial Tr. (Vol. II).  The evidence relating to the reasons expressed in the City's answer to Belcastro-Gonzalez's NEOC complaint were relevant to the City's credibility:

> The COURT:  There's some limiting of your court case because of what you do in the EEOC.  And as a practical matter, there is for it undermines their credibility.  But that's a practical matter.  We haven't had any case law that says that it's definitive for the defendant.

---

[1] The subject of the relevance of Belcastro-Gonzalez's opposition, on her own behalf and on behalf of others, to Kerry Neumann's conduct in 2010 was addressed in the Court's order on the City's motion for summary judgment.  Filing No. 108 at 12–13, Memorandum and Order.  The Court found a continuing course of conduct relating to her claim of being passed over for promotion and stated that the City's acknowledged failure to investigate the complaints provided background and context for the failure to promote Belcastro-Gonzalez.  Id.

3

*Id.* at 71–72, Trial Tr. (Vol. II). The Court allowed evidence on the NEOC responses, over the City's hearsay objection, as admissions by a party opponent. *Id.* at 7–8. The parties agreed to the following limiting instruction to the jury with respect to evidence of the NEOC proceedings:

> In the context of [Chief Schmaderer's] deposition testimony, there will be some discussion about the EEOC, the Equal Opportunity Employment Commission, and the NEOC, the Nebraska Equal Opportunity Commission.
>
> Those two commissions work in Nebraska. And if there's a claim, people have to make their claim to that commission first. And when they—one or both of those commissions first before they can come to this court.
>
> When they do that, both parties set out their positions, okay? So, Ms. Belcastro-Gonzalez set out her position and the City set out its position. And then once the two set out their positions, that generally forms the basics of the lawsuit.
>
> What the EEOC does or what the NEOC does doesn't make any difference to us. You're the only ones that find the facts in this case, nobody else.
>
> So, you're not going to hear anything about the NEOC or the EEOC except the part that sets forth the basis of this lawsuit. And that's what's relevant in this deposition when you hear it, that's all that's relevant.

*Id.* at 179–80. Chief Schmaderer then testified by deposition designations as follows:

> Q. All right. This document is signed by your attorney, the City's attorney, Michelle Peters. Are you aware of that?
>
> A: I am.
>
> Q. Do you understand that this is the kind of document that must be prepared by the parties to a dispute before the NEOC?
>
> A. I do.
>
> * * *
>
> Q. And do you understand that the City's obligated to give a full and complete statement of the reasons why Captain Gonzalez was not promoted?
>
> A. Yes.
>
> Q. And in this case, you were the person who made the sole decision not to promote Captain Gonzalez, correct?
>
> A. Correct.

Q. So, this in many senses is a statement of the reasons why you did not promote Captain Gonzalez but instead promoted others into that position, correct?

A. Yes.

Q. Did you participate in providing the information to the City of Omaha to create Exhibit 13?

A. I did.

*Id.* at 180–81. During the course of the trial, the City, in fact, adduced evidence of numerous reasons for not promoting Belcastro-Gonzalez that were not contained in the defendants' NEOC response, including that Belcastro-Gonzalez did not have a Master's Degree and had not attended the FBI Academy, an overtime investigation had been opened against her, her Gallup rating, her poor attitude in a 2017 unrecorded interview, her poor attitude in a 2018 recorded interview, the number of traffic stops she conducted, missed meetings, she didn't get along with people, a one-day suspension, her lack of leadership in some 2018 incidents, and that Ken Kanger and Michelle Bang were more qualified. Filing No. 148 at 20, 58, Trial Tr. (Vol. III); Filing No. 149 at 18–22, 25–43, Trial Tr. (Vol. IV). There was also evidence of lack of attention to detail.[2] Filing No. 148 at 146–48, Trial Tr. (Vol. III).

II. LAW

"Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law," and "[a] court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nassar v. Jackson,* 779 F.3d 547, 551 (8th Cir. 2015). "Judgment as a matter of law is warranted only when

---

[2] Although the Court sustained an objection when defense counsel was cross-examining Belcastro-Gonzalez about whether attention to detail was an important trait for a Deputy Chief to have with regard to the uniform, Belcastro-Gonzalez had already testified that attention to detail was "absolutely" important in connection with an internal affairs investigation of an officer-involved shooting that found her service revolver was not fully loaded. Filing No. 148 at 146–48, Trial Tr. (Vol. III).

5

no reasonable juror, taking all reasonable inferences in the light most favorable to the opposing party, could find against the movant." *Est. of Snyder v. Julian*, 789 F.3d 883, 887 (8th Cir. 2015); *Townsend v. Bayer Corp.*, 774 F.3d 446, 456 (8th Cir. 2014) ("A grant of [judgment as a matter of law] is proper only if the evidence viewed [favorably to the prevailing party at trial] would not permit reasonable jurors to differ as to the conclusions that could be drawn."). "In deciding whether to grant judgment as a matter of law, [courts] may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." *S. Wine & Spirits of Nevada v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 533 (8th Cir. 2011).

Under Fed. R. Civ. P. 59(a)(1)(A), "[a] new trial may be granted on all or some issues 'after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 414 (8th Cir. 2016) (quoting Fed. R. Civ. P. 59(a)(1)(A)). A new trial is warranted when the first trial resulted in a miscarriage of justice, the verdict was against the weight of the evidence, the damages award was excessive, or there were legal errors at trial. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "With respect to legal errors, a 'miscarriage of justice' does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error." *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013) (citation omitted). The standard for granting a motion for new trial is higher than the standard for granting a motion for judgment as a matter of law. *See Michigan Millers Mut. Ins. Co. v. Asoyia, Inc.*, 793 F.3d 872, 878 (8th Cir. 2015). Where the basis of the motion is that the jury's verdict is against the weight of the evidence, "'[t]he key question [on appeal] is whether a new trial should

have been granted to avoid a miscarriage of justice.'" *Id.* (quoting *Keenan v. Computer Assocs. Int'l, Inc.*, 13 F.3d 1266, 1269 n.3 (8th Cir. 1994)). "[T]he trial court has wide discretion in deciding whether to grant a new trial." *United States v. Walker*, 393 F.3d 842, 847–48 (8th Cir. 2005). In considering a motion for a new trial, the court is free to independently weigh the evidence and need not view the evidence in the light most favorable to the verdict. *Id.*

A plaintiff can prevail in an action for retaliation in employment by showing: (1) he or she engaged in protected activity; (2) he or she suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and (3) there is a causal connection between the protected activity and the adverse action. *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012).[3] To show causation, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Federal Rule of Evidence 606(b)(1) provides the general rule regarding inquiries into the validity of a verdict:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1). "As enacted, Rule 606(b) prohibited the use of any evidence of juror deliberations, subject only to the express exceptions for extraneous information and

---

[3] In this case, elements (1) and (2) were not in dispute and the only issue for the jury was whether Belcastro-Gonzalez's complaints of discrimination were the motivating factor for the City's failure to promote her.

7

outside influences." *Warger v. Shauers*, 574 U.S. 40, 48 (2014). "Congress' enactment of Rule 606(b) was premised on the concerns that the use of deliberations evidence to challenge verdicts would represent a threat to both jurors and finality in those circumstances not covered by the Rule's express exceptions." *Id.* at 50. Extraneous information includes objective events such as publicity and extra-record evidence reaching the jury room, and communication or contact between jurors and litigants, the court, or other third parties. *United States v. Krall*, 835 F.2d 711, 716 (8th Cir. 1987). "Rule 606(b) establishes very strict requirements for accepting testimony from jurors about their deliberations, and trial courts should be hesitant to accept such testimony without strict compliance with the rule." *Banghart v. Origoverken, A.B.*, 49 F.3d 1302, 1306 n.6 (8th Cir. 1995); *see also Tanner v. United States*, 483 U.S. 107, 117–18 (1987). "'In a civil case, the exposure of jurors to materials not admitted into evidence mandates a new trial only upon a showing that materials are prejudicial to the unsuccessful party." *Moore v. Am. Fam. Mut. Ins. Co.*, 576 F.3d 781, 787 (8th Cir. 2009) (quoting *Peterson by Peterson v. Gen. Motors Corp.*, 904 F.2d 436, 440 (8th Cir. 1990)).

The district court has broad discretion in managing juror misconduct allegations. *United States v. Wintermute*, 443 F.3d 993, 1002 (8th Cir. 2006). "Allegations of juror misconduct must be supported by evidence that is not barred by Federal Rule of Evidence 606(b), which 'generally precludes the testimony of any juror regarding intrajury communications, as well as the testimony of a nonjuror regarding an intrajury statement,' except where the testimony concerns 'extraneous prejudicial information and outside influences brought to bear on the jury.'" *United States v. Muhammad*, 819 F.3d 1056, 1062 (8th Cir. 2016) (quoting *United States v. Caldwell*, 83 F.3d 954, 956 (8th Cir. 1996)).

8

"[I]if a party shows that outside contact with the jury presents a reasonable possibility of prejudice to the verdict, he is entitled to a hearing on the matter." *Id.* (quoting *United States v. Tucker*, 137 F.3d 1016, 1030 (8th Cir. 1998)). "However, an evidentiary hearing is not necessary if the movant 'fails to raise a colorable claim of outside influence.'" *Id.* (quoting *Wintermute*, 443 F.3d at 1002). "Speculation and unsubstantiated allegations do not present a colorable claim of outside influence of a juror." *Wintermute*, 443 F.3d at 1003; *see also United States v. Caldwell*, 776 F.2d 989, 998 (11th Cir. 1985) ("The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate.").

In order to warrant a new trial based on evidentiary error, a party show that an allegedly erroneous evidentiary ruling was so prejudicial that a new trial would likely produce a different result. See *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 880 (8th Cir. 2015) (quoting *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 833 (8th Cir. 2005)). A trial court "has broad discretion in determining the relevancy and admissibility of evidence." *United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007).

III. DISCUSSION

The Court first finds that the City has not presented evidence beyond speculation of juror misconduct. The affidavit submitted in support of the City's juror misconduct allegation does not show that the jury heard extraneous information or that a third-party contact influenced deliberations. There is a dearth of reliable and admissible evidence of any inappropriate conversations or actions of the jury.[4] Thomas Shaffer's affidavit does

---

[4] The City could have obviated the uncertainty surrounding conversations with an unknown juror at an uncertain time by offering the affidavit of the retired officer who allegedly communicated with the juror or by producing the text messages referred to in Shaffer's affidavit.

9

not state when the allegedly prejudicial communication was conveyed. Nothing indicates that any contact was made with a juror prior to the rendering of the verdict. To the extent that Shaffer was aware of third-party contacts during the trial, he should have conveyed that information to the Court. The scant evidence submitted by the City does not support an inference of juror misconduct that could have influenced the verdict in this case. Further, evidence of jury nullification is lacking. A retrospective statement about a verdict "sending a message," does not serve to establish that the jury disregarded the Court's instructions. The City has failed to raise a colorable claim of outside influence that would necessitate a hearing on the matter. The Court declines to disturb the jury's verdict under these circumstances.[5]

The Court next finds there is sufficient evidence to support the jury's finding in this case. Defendants have not demonstrated that the jury lacked a legally sufficient evidentiary basis to find in favor of the plaintiff on her claim of retaliation. Evidence supports the jury's finding that Belcastro-Gonzalez's complaints of discrimination were the motivating factor for the City's failure to promote her.

Further, the Court stands by its evidentiary rulings. Contrary to the City's contentions, Stacy Witkowski's testimony was offered pursuant to a limiting instruction and was cumulative of other evidence that the jury heard about complaints against Kerry Neumann in 2010–11. The City agreed to an instruction limiting the evidence to the issue of Chief Schmaderer's knowledge of the events. The jury is presumed to have followed the Court's instructions. The NEOC response evidence was also subject to a limiting

---

[5] In light of this resolution, the Court finds it unnecessary to strike the affidavit submitted in support of the City's motion. The affidavit admittedly contains hearsay, and the Court has considered it only for what it is worth.

instruction. The City was not precluded from offering evidence as to reasons that were not contained in the NEOC response. The City has not shown that the Court's errors, if any, would have made a difference in the outcome of the trial.

Accordingly, the Court finds the City's motion for judgment as a matter of law and/or for a new trial should be denied.

IT IS ORDERED:

1. Defendants City of Omaha's and Todd Schmaderer's motion for judgment as a matter of law and/or motion for a new trial (Filing No. 140) is denied

2. Defendants City of Omaha's and Todd Schmaderer's motion for a hearing (Filing No. 154) is denied.

3. Plaintiff Katherine Belcastro-Gonzalez's motion to strike the defendant's index (Filing No. 162) is denied.

Dated this 21st day of February 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge